The United States Court of Appeals for the Ninth Circuit is now in session. Good morning and welcome to the Ninth Circuit. I'm Judge Nelson and it's a pleasure to be joined by my colleagues Judge Biby and Judge Bolton. We're very grateful for Judge Bolton's service to help us handle our docket for the remainder of the week. We'd also like to welcome counsel who will be arguing virtually and those in the courtroom today. We ask that during arguments you please watch your time, keep to your allotted time frames and try to sum up your argument as it's concluding and let us know if you'd like to reserve any time for a rebuttal. We'll proceed to argument. There's three cases that have been submitted Tysol Mattol v. Garland case number 16-70467 Escobar v. Garland case number 17-70243 and Yoshikawa v. Segurant case number 21-15970. We have four cases set for the argument schedule and the first one is United States v. Tagitac case number 21-10133. That is set for 10 minutes per side and counsel, if you're ready, you may proceed. Morning, your honors. May it please the court. Max Mizono on behalf of defendant appellant Alan Tagitac. With the court's permission, I'd like to reserve two minutes for rebuttal. Your honors, the district court in this case determined that Alan Tagitac was a career offender based on his prior conviction for robbery in the second degree and determined that it was a crime of violence under the force clause of the career offender guidelines. It made this determination because the government pointed to separate model jury instructions as to the three separate subsections under Hawaii's robbery in the second degree statute and determined that because there were separate jury instructions, the statute was divisible because each subsection was a separate crime essentially. That was error because it is unclear why there are separate jury instructions under Hawaii state law and it is unclear why the juries are required to agree unanimously as to those three separate subsections. Before I detail why... Can I ask about the, I mean, the common reading of the three subsections seems to indicate that they are separate. They seem to have different mens rea requirements as to each section and they seem to address separate issues. Doesn't that help resolve the issue in this case? In most cases it would, Your Honor. This court's rule and its holding in Rendon v. Holder, which we cited to you in our reply brief, typically answers that question as to whether a statute is divisible or indivisible because of separate model jury instructions as to a disjunctively worded statute. So the answer to Your Honor's question is typically yes, it does answer that question as to whether a statute is divisible and creates separate crimes. But because Hawaii state law is very confusing and requires unanimity far beyond just elements as to a statute, the answer is not just clear as to pointing to these separate model jury instructions. So the first case that we cited to in the briefs that requires unanimity far beyond just an element or the statute's elements is the Arceo case. In Arceo, the Hawaii — Excuse me, counsel. Could I ask a question? I'm not familiar with how the state of Hawaii promulgates model jury instructions. Are they something that are approved by the Hawaii Supreme Court? Are they something that just a committee propounds? I mean, do they have the force of law before they might be approved in a decision of an appellate court? In Your Honors, we tried — I tried looking into this issue, particularly as to when these jury instructions were created and whether it was before or after the Arceo decision as to whether unanimity is required as to the elements or just to specific acts. And so I couldn't find that answer in particular as to when they were created or when they were promulgated. But going back to Arceo, Arceo essentially requires — the rule coming out of that case requires specific act unanimity far beyond just the elements of a statute. It requires specific act unanimity underlying the conduct or the statutory conduct element of a statute. At issue in Arceo was the defendant who was prosecuted for sexual assault in the first degree and sexual assault in the third degree. And at trial in that matter, the state adduced evidence of multiple incidents that constituted the unlawful touching or penetration as pertinent to the conduct element in those two statutes. The Hawaii Supreme Court stated that a jury unanimity instruction was required as to the specific act or, rather, the prosecution had to elect which specific act constituted the unlawful touching or penetration. So that is the first case where we see under Hawaii — Counsel, I'm not sure — I want to know why it matters that California has done that. I'm sorry, Hawaii has done that. It seems to me this is to your advantage that Hawaii has — has — has required this. That — that gives — seems to give your client's additional protection, because it won't allow a jury then to disagree over — over certain facts but come to a unanimous verdict on a — on a crime. So, you know, that's — that's a good thing for you. I'm not sure why your client gets the benefit of that rule here. We can look at this statute. We know which provision of the statute your client was convicted of, because Hawaii requires a unanimous jury verdict. It also requires a separate jury instruction. So we know precisely which subsection, because we know what jury instruction was given. Then why don't we just look at that subsection and decide whether it's — whether it satisfies the force clause? So — so, Your Honors — Your Honor, Hawaii — Hawaii goes beyond just requiring unanimity for — for the elements of a statute. And — and what the Clinch case tells us, as we cited to both in the — the opening brief and the reply brief, is that it — the determination whether to treat statutory alternatives as alternative means or something else must be done on a case-by-case basis, or — or rather, a statute-by-statute basis. Counsel, in this case, we know precisely which section of the Hawaii Code your client violated. A jury instruction was given to that effect, and we know that the jury had to find it unanimously. Now, if we look at that statute, it — it satisfies the force clause of the sentencing guidelines. So what's the problem? So I — I understand — But why does it — why does it matter that Hawaii might require unanimous jury — that's a great blessing to your clients. But why — why does — why does that matter in this case? So I understand Your Honor's point. It's a point well taken. However, under the modified categorical approach, right, we — we have to first determine whether a statute is divisible or indivisible. If it's divisible, then we can look at the certain documents that — that tell us what subsection a defendant has violated. So — so if we make the determination already that this statute is — is divisible, right, by pointing to the separate model jury instructions, which Your Honor just indicated, sure, we can point to the subsection B and state, yes, tag attack was convicted of subsection B, of robbery in the second degree, and — and we can determine, yes, that this was a forced clause crime of violence under the career offender guidelines. That all makes sense. However, it is unclear why — why, as to this specific statute in particular, why Hawaii requires unanimity — unanimity and why Hawaii has separate model juries — Counsel, why — why do you care for the — about the answer to that question of why should we care what the answer to that question is? It seems like you're asking a question of — of motivation. That is, we don't understand the — the reasoning of the — of the Hawaii Supreme Court. What difference does it make? Your client gets the benefit of that rule. But the — but that — having the benefit of that rule also has consequences here. It tells us precisely what he did. And now we can test as to whether that satisfies the forced clause. So where's the problem? The fact that — that we don't — that it may be unclear as to why, you know, certain judges have taken certain positions seems to me utterly irrelevant. Well, Your Honor, the Hawaii Supreme Court has made it patently clear under Klinge and Jones that the determination whether to treat statutory alternatives as alternative means or something else must be made on a case-by-case basis. There is no case that — that our research discovered or that the government has pointed to that tells us why these subsections require unanimity — unanimity — unanimity. Are you — have you read the case State v. Uli, 65 P. 3rd, 143? I am familiar with that case, Your Honor, yes. Well, I don't think either side cited it, but it seems to answer this question where the Hawaii Supreme Court said that these are separate — separate — or divisible subsections. Because it — it addressed in subsection A that the defendant was committing — that there's two provisions, that he was committing a theft, and second, that he had to use force against a person who was present with the intent to overcome physical resistance. That second prong isn't in B — isn't in subsection B. So why — why doesn't that resolve this issue for us? Well, Your Honor, respectfully, I don't know if that case is — is entirely on point following Arceo's specific act-unanimity rule. And I would also just mention to the Court that — that Klinge also analyzed a statute that was written disjunctively, the terroristic-threatening statute — But it wasn't this exact statute. That's my point. In Iuli — Iuli — Iuli, it — it seems to address this specific statute. If you — if you want to take a look at it and address it on rebuttal, that's fine, too. I can do that, Your Honor. And so I guess with the time remaining, I'll just conclude that because there's no case directly on point addressing why unanimity is required as to these three separate subsections, the government did not carry its burden at the District Court. It cannot carry its burden here. We'd ask the Court to remand for additional proceedings before the District Court. Thank you. We'll give you — we'll give you a minute for rebuttal. We'll hear from the government. May it please the Court, my name is Michael Albanese, and I represent the United States. I'd like to start with the last point that was on discussion, and — and really, what is the point of the categorical approach and the modified categorical approach? And that is for the sentencing judge to be able to say, as a matter of law, that a prior — in a prior conviction, a defendant needed to be guilty of certain acts beyond a reasonable doubt by a unanimous fact-finding of either a judge or jury, depending on whether it was a plea or trial case. The Supreme Court in Des Camps answered this question, is why a modified categorical approach applied only to divisible statutes? And it said, because only divisible statutes enable a sentencing court to conclude that a jury or a judge at a plea hearing has convicted the defendant of every element of a generic crime. In that case, the issue was an enumerated cause offense, but the same applies here. In this case, the appellants have pointed to no reason to doubt that in the 2004 conviction, the finder of fact — the judge in this case, because it was a guilty plea — must find beyond a reasonable doubt that the defendant committed the element that involved the use of force. In this case, the threatened use of imminent force. There's no question about that. The question that appellant raises is that in some cases, jury unanimity is required for other things in addition to elements. And I agree with the court, at least the suggestion of one of you, that it doesn't matter. As long as the sentencing judge — in this case, Judge Otake — was able to say as a matter of law that the finder of fact in 2004 had to find Mr. Tagetak guilty of a crime of violence because one of the elements was a use of force, then it doesn't matter what Hawaii is calling it. As a matter of federal law, it is an element and it constitutes a crime of violence. But I would also say that the case law that appellant cites does not suggest that Hawaii law is substantially different than federal law with regard to when it requires unanimity. None of the cases discussed require jury unanimity in the case of alternative means. And in fact, in State v. Jones, the Hawaii Supreme Court is very clear that the distinction between alternative means and separate elements is the same as in federal court. Alternative means do not require jury unanimity, whereas separate elements do. Most of the cases that appellants — Counsel, how would you distinguish — your opposing counsel argues — points to State versus Clean. How do you distinguish that case from this case? I think by a few ways, which I think are telling. First of all, in Clean, the statute was terroristic threatening. The conviction was terroristic threatening in the first degree, which incorporates a definition of terroristic threatening under the Hawaii statute 707-715. If you look at that definition, that statute describes alternative means. It describes two different mens rea that are possible for the crime of terroristic threatening. It does not describe two different sets of conduct. And that's a pretty common format we see in our federal criminal statutes where, for example, you can knowingly or intentionally distribute a controlled substance or something like that. There's frequently a disjunctive mens rea in statutes, and courts have treated that as alternative means. So that's an example of where the Hawaii court interprets a particular statute as alternative means. And there's nothing to suggest that it would — or sorry, there is nothing in that case to suggest that jury unanimity is required for either of those subsections of the terroristic threatening definition. That is a classic alternative means situation. You contrast that to the other cases cited by Appellant Arceo, in Jenkins, in Cordero. Those are cases in which the Hawaii Supreme Court is looking at separate offenses. It's not alternative means, but they're looking — there's confusion in those cases because the prosecutor chose to charge a single crime in circumstances in which there are — the facts suggest multiple crimes that could fit that definition. And so the Supreme Court required the prosecution to either elect which crime it was — it wanted the jury to consider for each count or to have a unanimity instruction. Can I ask you one more? I appreciate your follow-up on that. On Iuli, maybe you haven't had a chance to read that case or be familiar with it, but it does say there's two material elements in subsection A, and one of those material elements is not in subsection B. In your opinion, does that help answer this question, or am I overreading that case in its application? Your Honor, I regret that I'm not closely familiar with that case, but from what I'm hearing, it does support the government's position, and I would also point to footnote 18 in the State v. Jones case. In that footnote, the court specifically looks at assault in the second degree as an example of a statute that is divisible and says specifically that subsections A and B of that statute are divisible, and that statute has an almost identical statutory construction as robbery in the second degree. And so I would suggest that that is additional evidence that if the Hawaii Supreme Court were to take up the question of robbery in the second degree, it would similarly find. You know, the State v. Jones case basically instructs this court or instructs, I guess, Hawaii, informs Hawaii law that the question of whether something is an elements or alternative means should be resolved by looking at the statutory language as well as the practice in the courts. And here, I think as one of you observed right off the bat, just as a matter of statutory construction, each of the three subsections of robbery in the second degree are clearly separate crimes. They have separate mens rea requirements, and they have separate conduct that they wish to punish such that you can be guilty of A and not guilty of B or guilty of C and not guilty of B. And moreover, the practice in the district, I think, confirms the view that they are separate crimes. First, as the district court noted and emphasized, they have separate jury instructions which lay out separate elements. And to answer the court's question about jury instructions, my understanding is that they are written by a standing committee on jury instructions and that they are then approved by the Hawaii Supreme Court, but not as to substance. They're simply approved for publication. So they're not precedential in that regard, similar to the Ninth Circuit instructions, but they are certainly indicative of the practice in Hawaii courts. And last I'd mention, this is sort of a simple point, but the judgment for the 2004 conviction spells out the subsection. And that's a practice that would make no sense in an alternative means case because there would be no distinction between subsections A and B. When we have a conviction or a judgment that, again, for a drug crime, it doesn't spell out whether the mens rea was knowingly or intentionally because, frankly, you would never know. There's no unanimity instruction on that. Whereas here, it's a guilty plea case, but the judgment spells out that Tag Attack was convicted of section 1B, which is, I think we all agree, if we get down to that point, is a crime of violence under the force clause. Your Honor, for those reasons, I ask the court to deny the appeal and to affirm Judge Otake's decision. Thank you, counsel. And we'll hear one minute of rebuttal. Thank you, Your Honor. Just to address the Jones case briefly, the Jones case has a quite lengthy discussion about terms that we use here in federal courts, alternative means and specific acts. And what the Jones case tells us, or what we can glean from the Hawaii Supreme Court's discussion of these terms, is that the Hawaii Supreme Court uses them differently than the federal courts typically do. Jones states specifically that alternative means is a legal concept that addresses whether statutory alternatives, not multiple acts or incidents, may be treated as a single element of the crime. And in an abstract sense, there may be a danger that separate and distinct culpable acts could be used as alternative ways of establishing the conduct element of a crime. So the way Hawaii uses alternative means is not the same way that federal courts use alternative means. Federal courts adhere to the abstract sense of the phrase. For example, in this court's decision in United States v. Kim, 196 F3rd 1079, this court examined the aiding and abetting statute and found that a defendant who had done several different ways to violate that statute, jurors did not have to agree unanimously whether he commanded, ordered, or assisted. So the point is, and I'll wrap up briefly, is that the way the Hawaii State Supreme Court uses these terms is different than the federal court. We're talking about two separate things. And so the fact that there's no case directly on point in this matter addressing whether robbery in the second degree is three crimes or one supports Mr. Tagetak's position and the government, merely by pointing to those separate model jury instructions and the court, the district court's reliance on them, was error. Thank you, counsel. That case is now submitted.
judges: BYBEE, NELSON, Bolton